IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA FLOURNOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 7159 |
| | ) |
| DANIEL COLBENSON; PATRICK QUINN; and CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

# **OPINION AND ORDER**

Donna Flournoy claims damages for injury from the explosion of a Noise Flash Diversion Device, referred to by the parties as a "flash bang," while she was lying on an air-mattress on the floor of a room in an apartment raided by defendant police officers in order to execute a search warrant. The Second Amended Complaint, as amended, charges defendants Daniel Colbenson and Patrick Quinn, pursuant to 42 U.S.C. § 1983, with using excessive force in violation of the Fourth Amendment and engaging in intentional infliction of emotional distress in violation of Illinois law. Plaintiff also alleges a state law indemnification claim against defendant City of Chicago. Plaintiff voluntarily dismissed all other

originally named police officers and also dismissed a count charging assault and battery.

The court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1331 and 1367.

The case is now before the court on plaintiff's motion for summary judgment of excessive force liability on the part of defendants Colbenson and Quinn and on the motion of defendant Colbenson for summary judgment either because he did not personally use or deploy the flash-bang or because he is entitled to qualified immunity.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. ***Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.***, 555 U.S. 271, 274 n.1 (2009); ***Malen v. MTD Prods., Inc.***, 628 F.3d 296, 303 (7th Cir. 2010); ***Stokes v. Bd. of Educ. of City of Chicago***, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. ***Ponsetti v. GE Pension Plan***, 614 F.3d 684, 691 (7th Cir. 2010); ***Outlaw v. Newkirk***, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to

establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct.

2548.  Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'"  ***Logan***, 96 F.3d at 978.  "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute."  ***Id.*** (citation omitted).  In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  ***McGinn v. Burlington Northern R.R. Co.***, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).  Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986).  Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'"  ***Logan***, 96 F.3d at 978 (quoting ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

***Outlaw***, 259 F.3d at 837.

Defendant Colbenson contends that plaintiff's § 1983 claim also fails because he is entitled to qualified immunity.  ***Saucier v. Katz,*** 533 U.S. 194 (2001).  There is a two-step analysis for assessing claims of qualified immunity.

- 4 -

First, it must be determined whether the official's conduct violated a constitutional right.  Second, it must be determined whether the right was clearly established at the time of the conduct alleged.  It must be clear that the official's conduct was unlawful in the situation confronted before qualified immunity can be denied. ***Malley v. Briggs***, 475 U.S. 335, 341 (1986); ***Green v. Butler***, 420 F.3d 689, 700 (7th Cir. 2005).

Turning first to the facts:

In November 2008, police officer Robert Lobianco, a member of the Chicago Police Department Mobile Strike Force, a unit designated to work in gang narcotic crime areas, received information from a "John Doe" that he/she had purchased crack cocaine from a person he/she knew as "Anthony" twice a day during the past two months.  The purchases were made at a ground level apartment located at 1108 N. Lawler Avenue in Chicago.  Doe stated that when Anthony came to the door of the apartment to engage in drug sales he was holding a black semi-automatic handgun.  Based on this information, Officer Lobianco obtained a search warrant from a state court judge for the person of "Anthony" and the premises of the apartment located at 1108 N. Lawler, to search for illegal drugs, money, paraphernalia, and unlawfully owned firearms.

Officer Lobianco requested the assistance of a Special Weapons and Tactics Team ("SWAT Team") to assist in entering to perform the search. SWAT Team members Brown and Colbenson developed the plan for execution of the search of the apartment. The apartment has a living room with a window that faces North Lawler Avenue. A second living room window is around the west corner of the building. The front entrance to the apartment is also on the west side of the building. There is also a kitchen door entrance at the rear of the apartment. The plan was to breach and simultaneously enter both the front and the rear entrances.

Defendant Colbenson was in charge of a "brake and rake" tool used on the living room widows. The tool is a six-foot hook with ridges used to break and clear windows in order to distract and disorient occupants while other Team members simultaneously breach and enter doors. The tool can also provide a means to open and view an interior area.

Defendant Quinn's assignment was to deploy a flash bang device when the entrance on the west side of the building was breached with a battering ram. A flash bang is an explosive in a steel canister with a mechanical fuse. The fuse is contained by what is called a spoon. The spoon is placed in the palm of the hand.

The device does not explode until release of the spoon and a pin. The effects of the explosion are heat, light, and sound. The heat generated lasts, on average, less than 50 milliseconds but can be in excess of 2000 degrees centigrade. The thermal effect is seen as a bright flash or fire ball at the instance of explosion. Defendants' expert testified that the flash bang can be a lethal device if not exploded in a safe area. He defined a safe area as within a three-to-five-foot circumference.

Defendants' expert stated that the combination of the break and rake and the flash bang device work in tandem to allow officers to enter safely in a quick manner.

The entry to the apartment was made on the evening of November 13, 2008. The Team did not know who was in the apartment. At the time the entry was made, Tyesha Hunter, the girlfriend of Tony Walker, was seated on a chair in the living room. Plaintiff Donna Flournoy was lying on an air mattress located in the living room. Tony Walker and Mario Hearring, Flournoy's sons, were in the kitchen at the rear of the apartment. Walker and Hearring first heard a knock at the back door. The officers in front of the apartment and in the rear were in touch by radio. The windows in the living room were covered, but there was

illumination in the room.  Colbenson did not see either of the occupants before using the rake and break tool on the windows.

Events moved quickly, all within seconds.  Colbenson broke the first window and immediately moved to break the second window.  After he broke the second window Colbenson saw plaintiff roll off an air mattress.  Then he joined the officers entering the front door "in stick formation."

Although the sequence of events is not entirely clear, Mario Hearring testified that he heard the glass breaking before he heard a flash bang explosion.  Also, Tony Walker testified that he heard glass braking before he heard "booms."

After the front door was breached by a battering ram, one of the officers approached holding a "point shield."  He was followed by defendant Quinn holding a flash bang.  Defendant Quinn testified that he stepped around the shield, looked through the doorway and did not see any people or combustible materials in what he described as a safe area where the flash bang was going to land.  He then tossed the device.

When Tyesha Hunter first heard noise, she ran to a bedroom.  Plaintiff testified that she rolled off of the air mattress to avoid breaking window glass.  The flash bang struck and seriously injured plaintiff's knee.

The other members of the Team entered the rear kitchen door of the apartment, made a search, and arrested Tony Walker on drug and weapons offenses.

The Seventh Circuit has discussed the use of flash bang devices in a number of cases. *Estate of Escobedo v. Bender*, 600 F.3d 770, 784-86 (7th Cir. 2010) (affirming the denial of qualified immunity) ("*Escobedo I*"); *Estate of Escobedo v. Martin*, 702 F.3d 388 (7th Cir. 2012) (affirming a jury finding for defendants) ("*Escobedo II*"); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003) (finding the use of flash bangs appropriate where police executing a search warrant believed person with record of aggravated assault had access to weapons); *U.S. v. Folks*, 236 F.3d 384, 388 (7th Cir. 2001) (warning of the risk to innocent bystanders); *U.S. v. Jones*, 214 F.3d 836, 838 (7th Cir. 2000) (noting the risk of damage claims from the careless deployment of flash bang devices).

The most comprehensive discussions of the use of flash bang devices appear in *Escobedo I* and *Escobedo II*. In *Escobedo I*, 600 F.3d at 784-86, the factors to be considered were analyzed in detail as follows:

> The Defendant Officers contend that they are entitled to qualified immunity for their decision to use flash bang devices to enter Escobedo's apartment. We have previously indicated that the use of flash bang devices should be limited and is not

appropriate in most cases.  In ***Molina v. Cooper***, 325 F.3d 963 (7th Cir. 2003), while we found that the officers' use of flash bang devices during the execution of a "high risk" search warrant--which was obtained for Molina's home on suspicion of drug activity--was reasonable because Molina had a criminal history that included aggravated assault, was alleged to be the head of a drug distribution organization, was associated with gangs, was home and had access to a stash of weapons, we expressly stated that "we in no way suggest that the use of flash bang devices is appropriate in every case (or even most cases)."  *Id.* at 966 n.1, 973.  In finding that the officers' deployment of flash bang devices was reasonable, we emphasized that the officers had a significant reason to be concerned about their personal safety and we expressly limited our holding to the circumstances presented in that case.  *See id.* at 973.  In ***United States v. Folks***, 236 F.3d 384 (7th Cir. 2001), we discussed, in *dicta*, the potentially serious injuries that may arise from the use of a flash bang device during a search.  We suggested that a sufficiently careful (or perhaps reasonable) use of a flash bang device occurs when officers take a moment to look inside a residence or a room to ensure that no one would be injured by the device before tossing it and where officers carry a fire extinguisher to quickly extinguish any fires resulting from deployment of the device.  *Id.* at 388 n.2.  We also, in no uncertain terms, pointed out that the use of a flash bang device is justified when "potentially violent people [can] be found in [a] house," as opposed to individuals who pose no threat to the police or others.  *Id.* at 388 n.2 (emphasis added).  We noted that if the government does not use discretion in when and how they use flash bang devices, they "may [ ] risk significant damage claims from the careless deployment of flash-bang devices."  *Id.*  In ***United States v. Morris***, 349 F.3d 1009 (7th Cir. 2003), we explicitly stated that this Court has "often emphasized the dangerous nature of flash-bang devices and has cautioned that the use of such devices in close proximity to suspects may not

be reasonable." *Id.* at 1012. (Emphasis added). We suggested, also in *dicta,* that the use of a flash bang grenade is reasonable only when there is a dangerous suspect and a dangerous entry point for the police, when the police have checked to see if innocent individuals are around before deploying the device, when the police have visually inspected the area where the device will be used and when the police carry a fire extinguisher. *See id.* at 1012 n.1.

We also discussed the appropriateness of using flash bang devices in ***United States v. Jones***, 214 F.3d 836, 837-38 (7th Cir. 2000). In ***Jones***, we were disturbed by the officers use of flash bang devices and stated that while the district court found their conduct to be reasonable, we were less certain. *Id.* Specifically, we unambiguously stated that "police cannot automatically throw bombs into drug dealers' houses, even if the bomb goes by the euphemism 'flash-bang device,'" particularly where they do not believe the drug dealer is an unusually dangerous individual. *Id.* We found this to be true even though guns are normally used in the drug trade and even where a drug dealer has a prior weapons offense. *Id.* Lastly, while Jones was a criminal case that discussed the use of flash bangs in the context of suppressing evidence, we specifically stated that "[i]f this were a damages action seeking compensation for injury to the occupants or to the door, the claim would be a serious one." *Id.*

Other circuits have similarly considered the constitutional limits of using a flash bang device. *See, e.g.*, ***Boyd v. Benton County***, 374 F.3d 773, 777-79 (9th Cir. 2004) (use of flash bang device unconstitutional use of excessive force where police deployed it without either looking or sounding a warning when there were innocent individuals in a room as well as suspected robbers). Additionally, the court in ***Estate of Smith v. Marasco***, 318 F.3d 497, 515-18 (3d Cir. 2003), previously mentioned above, discussed the use of flash bang grenades to enter an individual's home where the purpose was not to arrest him and where the individual was

non-threatening, mentally unstable and suicidal. The *Marasco* court determined that a reasonable jury could find that the defendant officers' conduct was unreasonable and excessive under the Fourth Amendment. *Id.*

Here, the Defendants first deployed a flash bang grenade as the ERT team made its entry into Escobedo's apartment. The record reflects that the Defendant Officers had no idea where Escobedo was located when they threw the first flash bang into his apartment. Additionally, there is no evidence that the officers visually inspected the area before throwing the flash bang device or that they looked inside, even ever so slightly, to see if anyone else was present that may be injured by the flash bang. The second flash bang device was deployed when the Defendants entered Escobedo's bedroom. The Defendants were only able to force the door open slightly and the room was "pitch black" when they threw the flash bang grenade. The flash bang device landed next to Escobedo's head when it exploded. The record reflects that Escobedo was blind and deaf when the officers entered his bedroom as a result of the location of the explosion in proximity to his head. Additionally, the Estate's police expert testified that a flash bang grenade should be placed in a room, not thrown or tossed, so as to prevent it from landing in an unintended location.

There is no evidence that the Defendant Officers were carrying a fire extinguisher even though they had previously deployed tear gas accelerants into Escobedo's apartment and, in fact, the initial flash bang device set a fire in Escobedo's apartment because it hit a tear gas canister. Furthermore, as stated previously, drawing all inferences in favor of the Estate, Escobedo was not considered to be a violent, dangerous individual, he was not the subject of an arrest and he did not pose an immediate threat to the police or others. The fact that Escobedo was in possession of a gun does not provide support for the Defendants that their use of flash bang devices was reasonable. *See Jones*, 214 F.3d at 837-38.

On these facts, viewed in the light most favorable to the Estate, the law points only in one direction: the use of the flash bang devices in this case was an unreasonable use of force to which qualified immunity does not apply. As discussed above, through the use of "lucid and unambiguous" *dicta*, see **Hanes v. Zurick**, 578 F.3d 491, 496 (7th Cir. 2009), we have repeatedly expressed our concern with the overuse of flash bang devices, especially where the circumstances do not warrant such extreme measures. This is because flash bang devices are essentially grenades and can be very dangerous and destructive. Despite the absence of a great deal of precedent in this area, the pertinent holdings and *dicta* do show a clear trend in the law that addresses the egregious circumstances of this case; even if the contours of the constitutional implications of the use of "flash bang" devices in general is not clear, it is abundantly clear that this case arises in precisely the circumstances that this Court and other circuits have sought to avoid by providing detailed guidance on when the use of flash bang devices is (and is not) appropriate under the Constitution. *See* **Anderson v. Creighton**, 483 U.S. 635, 640 (1987) (even *dicta* may clearly establish a right); *see also* **Hanes**, 578 F.3d at 496. If this were a borderline case, perhaps the relative paucity of judicial holdings forbidding the use of flash bang devices as compared to other more fully developed areas of Fourth Amendment jurisprudence would counsel in favor of a generous application of qualified immunity. However, on the facts of this case, the officers' conduct in the use of the flash bang devices so clearly exceeded the bounds of reasonableness in the circumstances that it cannot be said to lie near the "hazy border between excessive and acceptable force" along which qualified immunity shields officers from liability for their snap judgments, if those judgments prove to be wrong upon further reflection.

Based on the pre-existing case law, it was clearly established as of July 19, 2005, that throwing a flash bang

>device blindly into an apartment where there are accelerants, without a fire extinguisher, and where the individual attempting to be seized is not an unusually dangerous individual, is not the subject of an arrest, and has not threatened to harm anyone but himself, is an unreasonable use of force. Therefore, taking the facts as presented to us from the district court, the Defendants are not entitled to qualified immunity and the issue of the officers' decisions must be presented to a jury.

Plaintiff contends that she is entitled to summary judgment of liability on her excessive force claim because defendants did not know or attempt to learn that she was an innocent bystander in the apartment before deploying a flash bang into the living room. On plaintiff's motion, the facts must be construed in a light most favorable to defendants. There is testimony on the part of defendant Quinn that he looked into the living room and did not see plaintiff before he tossed the flash bang into what he states was a safe area. If a jury accepts the police officer's testimony that he looked and saw the area in which the device was deployed to be safe, there could be a finding of no liability on the part of either defendant, notwithstanding a failure to determine who was in the room or the effect of the almost simultaneous breaking of windows on the position or movement of plaintiff when the device was deployed. Viewing the evidence in the light favorable to defendants, plaintiff's motion must be denied.

The motion of defendant Colbenson for summary judgment in his favor on the issue of liability requires that the facts be construed in a light most favorable to plaintiff. On the known facts, a jury could conclude that defendant engaged in unreasonable force taking into account that he was a leader and active participant in forceful entry of the apartment; that his conduct could be viewed as extreme and unreasonable based on the apparent risks; and because reasonable precautions were not taken to protect bystanders exposed to serious injury by use of the flash bang deployed together with the brake and rake tool.

Defendant Colbenson's motion for a finding of qualified immunity fails because it has been previously held by the Seventh Circuit, on facts substantially similar to those alleged in this case, that qualified immunity did not exist in 2005, several years prior to the incident at issue in the present case. Alternatively, there are disputed facts which require a trial before a determination can be made that qualified immunity applies.

IT IS THEREFORE ORDERED AS FOLLOWS:

(1) Plaintiff's motion for summary judgment [91] is denied.

(2) Defendant Colbenson's motion for summary judgment [95] is denied.

(3) Defendant Colbenson's motion for a determination of qualified immunity [95] is denied.

(4) This case is set for a status hearing on April 24, 2014 at 2:00 p.m. to fix the date for presentation of a final pretrial order.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED:  APRIL   15, 2014