**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DONNA FLOURNOY, ) | |
| ) | Case No.: 09 CV 7159 |
| Plaintiff, ) | |
| ) | Judge John A. Nordberg |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| DANIEL COLBENSON, *et al*. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT DANIEL COLBENSON'S
<u>MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

Defendant Daniel Colbenson, by and through his attorneys, James G. Sotos, John J. Timbo and Jordan A. Erickson, of The Sotos Law Firm, P.C., in support of his Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a), states as follows:

**Principles Governing Judgment as a Matter of Law
Under Federal Rule of Civil Procedure 50(a)**

Under Federal Rule of Civil Procedure 50(a), "a court should render judgment as a matter of law when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Pandya v. Edward Hospital*, 1 Fed.Appx. 543, 545 (7th Cir. 2001), *citing* Fed. R. Civ. P. 50(a). *See also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Orlowski v. Eriksen*, *1 (N.D. Ill. 2009). When assessing a motion for judgment as a matter of law, the court must "examine the record in its entirety and view the evidence in the light most favorable" to the non-moving party. *Padya*, 1 Fed.Appx. at 545, *citing Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000). A trial court "must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Thomas v. Platt*,

2012 WL 4856988, *3 (S.D. Ill. 2012).

I.  **Defendant Colbenson is Entitled to Qualified Immunity Because He Did Not Violate Any Clearly Established Rights of Which a Reasonable Person Would Have Known.**

Plaintiff has only one claim against Officer Colbenson: excessive force. For Officer Colbenson to be found liable on this claim, the trier of fact must find the use of force was objectively unreasonable, *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003), *citing Graham v. Connor*, 490 U.S. 386, 399 (1989), **and** that Officer Colbenson was personally involved in the use of unreasonable force against Plaintiff. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). *See also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault."), *Hessel v. O'Hearn,* 977 F.2d 299, 305 (7th Cir. 1992) (stating that plaintiff could not rely on a "principle of collective punishment as the sole possible basis of liability" and that "[p]roximity to a wrongdoer does not authorize punishment.")*; Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) ("Each individual defendant can only be liable for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group.").

Officer Colbenson has plead qualified immunity as an affirmative defense. (Dkt. No. 41, pp. 9-10.) As a result, Plaintiff has the burden to prove that Officer Colbenson's conduct violated a clearly established constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Estate of Escobedo v. Martin*, 702 F.3d 388 (7th Cir. 2012) (granting officers qualified immunity in their use of flash bang devices upon hearing the evidence at trial). It is not enough that it is

clearly established that the use of unreasonable force violates the 4th Amendment. *Green v. Butler,* 420 F.3d 689, 700 (7th Cir. 2005). Rather, Plaintiff must demonstrate the violation of a clearly established right in a more particularized sense, by showing that it was clearly established, in relation to the specific facts confronting Officer Colbenson at the time he acted, that his conduct clearly unconstitutional. *Anderson v. Creighton*, 483 U.S. 635, 636 (1987); *Green v. Butler*, 420 F.3d 689, 700 (7th Cir. 2005). To satisfy that burden, Plaintiff must point to "closely analogous" case law which demonstrated the illegality of his conduct under similar circumstances. *Green,* 420 F.3d at 700. And, if he cannot identify any such cases, he must demonstrate that it was "obvious" under the circumstances that what he did was unconstitutional. *Id.; Powell v. City of Berwyn*, 2014 WL 4674305, *8-9 (finding, to be obvious, it must be, in the light of pre-xisting law the unlawfulness must be apparent). Plaintiff's evidence cannot begin to satisfy this standard.

Here, as the trial developed, the evidence against Officer Colbenson was two-fold: (1) that he participated in developing a "mission plan" that authorized the use of flash bangs during the execution of the high risk search warrant, and (2) that he saw Plaintiff rolling away from the window he was porting scant seconds before she was injured by the flash bang. In the totality of all evidence presented, none suggested that Defendant Colbenson used any force against Plaintiff at all.

    **A.**    **The Development of the Mission Plan Did Not Violate Plaintiff's Clearly Established Rights.**

It is unrebutted that Officer Colbenson was not involved in the decision approving the SWAT team's assist to the Chicago Gun Team in the execution of the warrant. Rather, Colbenson became involved when Lieutenant Wyberg requested his assistance in developing a plan for the team, in conjunction with Officer Brown, a non-Defendant. Over the course of the

day, Officers Colbenson and Brown formulated the mission plan, assigned tasks and equipment and further memorialized the plan in an eleven page document in evidence as Plaintiff's Exhibit 4. The plan provided that, in summary, there would be separate teams, each with a set of objectives, including a front breach team and a rear breach team. The plan allowed for each breaching team to utilize Noise Flash Diversionary Devices, at the discretion of the individual operators, to assist in gaining entry into the apartment. It also designated Officer Colbenson to "break and rake" the windows in so as to distract the occupants while gaining "eyes inside" the apartment.

Through cross-examination Plaintiff has aggressively criticized the mission plan as not including enough time to conduct adequate surveillance to determine who exactly was in the house at the time the warrant was executed, and for authorizing the use of flashbangs rather than a pole bang device. However, extensive research has not revealed a single case which supports the proposition that such a plan was constitutionally deficient, much less so in a clearly established sense. Indeed, Defendants' unrebutted evidence was that both Officers Brown and Colbenson shared responsibility for the development of the plan, and that after it was typed by Colbenson, a supervisor reviewed and sign off on the mission plan before the SWAT team was deployed to the target location.

Officer Colbenson testified that two observer snipers were sent to the target location approximately one to two hours prior to the rest of the team. While the snipers were gathering real time intelligence, Officers Colbenson and Brown put considerable detail into the mission plan, detailing the personnel, assignments, teams, vehicles and equipment that would be authorized at the scene of the warrant. Officer Colbenson testified that the mission plan was an outline of what each individual was authorized to do; however, it was up to each individual

officer's discretion as to whether to utilize the authorized tools including flashbangs, during the rapidly evolving execution of the high risk search warrant. Indeed, evidence demonstrated that the rear team did not deploy an NFDD due to the fortification on the back door - a fact that was discovered at the scene of the warrant execution.

Plaintiff repeatedly attempted, through testimony of Officers Colbenson and Quinn, to demonstrate that they should have or could have authorized and utilized a flash bang pole rather than deploying the device by hand. However, Plaintiff had no evidence that the Chicago Police Department even owned, let alone utilized, present day versions of pole bang devices when the warrant was executed in 2008. Defendant Quinn testified that such devices were not purchased by CPD until April 2010. Moreover, Officer Colbenson explained that the rudimentary, home-made version of the device which Chicago Police Department did have would have been unworkable under the circumstances presented at 1108 N. Lawler. At bottom, no case even arguably suggests that there was anything unconstitutional about the plan developed by Officers Brown and Colbenson, and Plaintiff's disagreement with the way the plan was developed does not equate with a clearly established or obvious constitutional violation. Accordingly, judgment as a matter of law should be entered in favor of Officer Colbenson based on Plaintiff's Fourth Amendment challenge to his participation in developing the mission plan.

II. **It Was Not Clearly Established That Defendant Colbenson Knew Excessive Force was Being Utilized Against Plaintiff, and that he Nonetheless Possessed and Ignored a Reasonable Opportunity to Prevent Excessive Force from Occurring.**

Initially, Plaintiff does not even have a failure to intervene claim against Officer Colbenson. (See Plaintiff's Second Amended Complaint, Dkt. No. 37.) Moreover, he has not even offered a jury instruction on any such claim against Officer Colbenson. He only has an excessive force claim, but there is no contention that Colbenson used any, let alone, excessive

force, against Plaintiff.

Even if Plaintiff were to attempt to switch gears and pursue such a claim at this late juncture, she has not produced any evidence to support such a claim sufficient to survive judgment as a matter of law on Officer Colbenson's claim to qualified immunity. To establish a claim for failure to intervene, Plaintiff must show Officer Colbenson had reason to know that excessive force was being used and had a realistic opportunity to intervene and prevent the harm from occurring. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). The Seventh Circuit Pattern Jury Instruction provides that Plaintiff must prove (1) Officer Quinn used excessive force on Plaintiff; (2) Officer Colbenson knew that Officer Quinn was about to use excessive force against Plaintiff; (3) Officer Colbenson had a realistic opportunity to do something to prevent harm from occurring; (4) Officer Colbenson failed to take reasonable steps to prevent harm from occurring; and (5) Officer Colbenson's failure to act cause Plaintiff to suffer harm.

Here, the evidence as it pertains to Officer Colbenson, in the light most favorable to Plaintiff, is that he momentarily saw her crawling or rolling off an air mattress mere seconds before the NFDD detonated, while breaking and clearing the second or "front" window, which was the catalyst for Plaintiff moving to the area of the detonation. But Plaintiff produced no evidence that Defendant Colbenson had any idea where Plaintiff was going, or that he had any reason to think that Plaintiff would meet the device which Officer Quinn introduced into the house at the moment of detonation, causing her injury. Indeed, when Plaintiff pressed Officer Colbenson on whether he yelled anything to the entry team during those few seconds, he explained there was nothing he could do because: (1) Plaintiff was an unknown, and he did not know if she was a threat, (2) he did not know where she was going, (3) he had both hands on the

"rake" so he could not activate his radio, (4) there was not enough time to drop his tool and activate his radio because, by that point, the NFDD had deployed, (5) yelling "no bang" to other SWAT members as Plaintiff suggested would have been both futile because every other SWAT member on scene was yelling "Chicago Police, search warrant", and disruptive because it could impede the entry of the entire front breach team into the apartment at the critical juncture of entry, and left them vulnerable to attack from occupants.

Finally, even if the Court were to determine, in the face of that evidence, that Colbenson may have had some opportunity to act, Colbenson's entitlement to qualified immunity would insulate him from liability in any event. Indeed, cases which have found liability for a failure to intervene typically occur in much more expanded time frames than the two or three seconds presented here. *See Pitzer v. City of East Peoria, Illinois*, 708 F.Supp.2d 740, 749-750 (finding no failure to intervene where the opportunity was instantaneous, even faster than a "poke and push"); *Gutierrez v. City of Indianapolis*, 886 F.Supp.2d 984, 998 (S.D. Ind. 2012) (finding a jury could not conclude the officer could have intervened where it only took seconds for the event to occur and the officers were occupied); *Thomas v. City of Fort Wayne*, 2008 WL 282348, *8 (N.D. Ind. 2008) (finding that a "reasonable jury could not possibly conclude that the bystander officers had chance to stop the force . . . when it took only seconds for the event to occur and the officers were occupied"). On the other hand, research has not uncovered a single case which has suggested that a police officer committed a clearly established constitutional violation by failing (1) to assess the likelihood within a second or two, that a subject he saw would come into contact with a device that he could not even see being deployed, and (2) convey his objection, within another second or two, to team members whom he also could not see and who would then be expected to process his objection in time to forestall the deployment

of the. Indeed, given the incredibly compressed time frame, in conjunction with the implausibility that any objection from Colbenson would have been received in time to prevent Defendant Quinn from dropping the device, requires that Colbenson's motion for judgment as a matter of law be granted. Here, Plaintiff has presented no such evidence from which a jury could conclude that Officer Colbenson knew excessive force was being applied to Plaintiff and that, despite that knowledge, ignored a realistic opportunity to intervene or stop Officer Quinn from deploying the NFDD.

WHEREFORE, Defendant Colbenson requests that this Court enter judgment in his favor as a matter of law.

Date: October 29, 2014

Respectfully Submitted,

/s/ **Jordan A. Erickson**
Jordan Ann Erickson, Attorney No. 6303256
*One of the Attorneys for Defendants Daniel Colbenson, Patrick Quinn and the City of Chicago*

James G. Sotos
John J. Timbo
Jordan A. Erickson
THE SOTOS LAW FIRM, P.C.
550 East Devon Avenue, Suite 150
Itasca, IL  60143-2632
(630) 735-3300
(630) 773-0980 (fax)
jlejcar@jsotoslaw.com

# CERTIFICATE OF SERVICE

       I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Wednesday, October 28, 2014, I filed in open court the foregoing **Defendant Daniel Colbenson's Motion for Judgement as a Matter of Law** with the Clerk of the Court by hand filing and providing Plaintiff with same, as listed below:

*Attorney for Plaintiff:*
Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 223-1100
(312) 781-9123 (Fax)
neslundlaw@yahoo.com

*Attorney for Plaintiff:*
Michael D. Robbins
Michael D. Robbins & Associates
20 North Wacker Drive, Suite 3710
Chicago, IL 60606
(312) 899-8000
312) 781-9123 (Fax)
mdrobbins@earthlink.net


                                                /s/ Jordan A. Erickson
                                                JORDAN A. ERICKSON, Attorney No. 6303256
                                                *One of the Attorneys for Defendants Daniel*
                                                *Colbenson, Patrick Quinn and the City of Chicago*